IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:21-cr-39 |
| JEREMY RICHARD BOWES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in this criminal action is motion by Defendant Jeremy Richard

Bowes ("Bowes") to compel the production of a report of the Government's interview with

witness Don Fuller.  ECF No. 842.  For the reasons that follow, the Defendant's motion will be

denied without prejudice.

## I.     BACKGROUND

Bowes is one of twenty individuals who have been indicted, along with Hertel & Brown

Physical and Aquatic Therapy ("H&B"), on charges of health care fraud and conspiracy to

commit wire and health care fraud.  Prior to the indictment, Bowes was employed by H&B as a

licensed physical therapy assistant. The operative Superseding Indictment alleges that, between

January 2007 and October 2021, Bowes and the other Defendants participated in a scheme

whereby false or inflated billing statements were submitted to various public and private health

care insurers in order to obtain payment for services that were not authorized or were not actually

rendered to H&B's patients in the manner described.  The Government contends that the alleged

conspiracy resulted in losses of at least $22 million to the defrauded entities.

1

In January 2022, following this Court's entry of a protective order, the Government began its production of discovery materials, which has occurred on a rolling basis. The present dispute concerns an email which AUSA Christian Trabold sent to Bowes' counsel on December 7, 2023, wherein the prosecution provided a summary of remarks or statements attributed to a witness by the name of Don Fuller. According to Bowes,

> This summary, in narrative form only and without any accompanying report that actually memorialized this interview, was disclosed in an e–mail. The substance of the summary seems exculpatory in nature, in that it described the work of "techs," "rehab techs," "PTs," and "PTAs." A fair reading of the summary is that work, actions or behaviors attributed to these descriptors, while employed at Hertel & Brown, or familiarly referred to in the summary as "HB," was not consistent with the government's theory of prosecution as set forth in the pending, superseding indictment.
>
> However, one of the summarized portions of the summary is, "[a]t Keystone Rehab, Bowes would not have been trained to perform patient evaluations. Fuller did not think Bowes[,] 'would have stood for that.'" The reference to "Bowes" seemingly refers to the same Jeremy Bowes who is listed as the 13th co–defendant in this case.

ECF No. 842, ¶¶ 1-2.

After reviewing the December 7, 2023 email, Bowes apparently conferred with Mr. Trabold, who declined to produce any further information about Mr. Fuller, including the interviewing agent's physical report of Mr. Fuller's interview. Bowes then filed the instant motion to compel production of the Fuller interview report. ECF No. 842. The Government has responded, ECF No. 844, and the matter is ripe for adjudication.

## II.   DISCUSSION

The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994). As a general matter

these other areas are limited to the Jencks Act[1] and materials available pursuant to the "*Brady* doctrine.*" *Id.* at 68.

Under *Brady v. Maryland*, *supra*, a prosecutor has an obligation to disclose evidence that is "favorable" to an accused individual so long as it is "material either to guilt or to punishment." 373 U.S. at 87. "Evidence is 'material' only if there is a reasonable probability that its disclosure would have led to a different outcome at trial, and so undermines confidence in the verdict." *United States v. Lacerda*, 958 F.3d 196, 218-19 (3d Cir. 2020) (citing *Turner v. United States*, 582 U.S. 313, 324 (2017)). The *Brady* doctrine extends to "evidence that goes to the credibility of crucial prosecution witnesses." *Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir.1999) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). "Referred to as *Giglio* material, this evidence is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists, and where 'the reliability of a given witness may well be determinative of guilt or innocence.'" *United States v. Maury*, 695 F.3d 227, 249 (3d Cir. 2012) (quoting *Giglio*, 405 U.S. at 154). Failure to disclose either type of material violates the defendant's due-process rights. *United States v. Coles*, 511 F. Supp. 3d 566, 576. And even inadmissible evidence may be material "if it could ... [lead] to the discovery of admissible evidence." *Johnson v. Folino*, 705 F.3d 117, 129-30 (3d Cir. 2013) (collecting cases).

In his motion, Bowes objects to the format of the Government's disclosure, arguing that, "[i]n effect, the government has paraphrased the paraphrasing of an interview." ECF No. 842, ¶7. Bowes offers several reasons why he believes disclosure of the entire interview report is required. He first argues that "it's impossible to get context in this disclosure when the

---

[1] *See* 18 U.S.C. §3500.

3

government has engaged in the paraphrasing of the paraphrase and withheld the actual report from which the paraphrasing was taken." The short answer to this argument is that Mr. Trabold states his disclosures were taken verbatim from the interviewing agent's report of the interview with Mr. Fuller. Thus, Mr. Trabold did not paraphrase any aspect of the agents report but instead reproduced the potentially exculpatory aspects of the report directly. Had the Government produced the original interview report, it would have been entitled to redact any non-*Brady* information pursuant to the Jencks Act. Thus, it is not clear that production of the actual report would have resulted in a broader disclosure than what Bowes has already received.

Bowes next argues that "Mr. Fuller may have been interviewed on other occasion(s) and not just November 8, 2023." ECF No. 842, ¶10. If this is the case, Bowes observes, "then the report may contain statements that are materially inconsistent with those previously made or otherwise attributable to [Mr. Fuller]." Id. "If so," Bowes argues, "then absence of the interview report from which the paraphrasing of the paraphrases was taken makes this exercise impossible to complete" because the Government will deem them Jencks material. *Id.* Bowes is correct that non-exculpatory information provided by Mr. Fuller is generally subject to disclosure only under the Jencks Act. 18 U.S.C. §3500. To the extent the Government's interview report(s) or rough interview notes reveal any material inconsistencies in Mr. Fuller's statements, such information likely constitutes *Giglio* impeachment information. The Court has previously indicated that it will enter a pretrial order in due course which provides for early disclosure of impeachment information in a timeframe that will ensure its effective use at trial. However, Bowes does not have a constitutional right to such information at this stage of the proceedings. *See Coles*, 511 F. Supp. 3d at 577 (impeachment material that concerns a witness's credibility or motivation to

4

testify may be disclosed at a later time, so long as it is provided in time for its effective use at trial) (citing authority).

Bowes further argues that "by accepting, without more, the government's paraphrased summary of Mr. Fuller's statements as the only disclosure of what he said, means that Mr. Bowes must accept what the government lawyer finds was said as true as to Mr. Fuller – instead of reviewing that interview report to allow himself to absorb the effect of Mr. Fuller's statements." ECF No. 842, ¶11.  Again, AUSA Trabold has represented that the Government's disclosures relative to Mr. Fuller were taken verbatim from the interviewing agent's report, alleviating concerns that Bowes must "accept what the government layer finds was said as true." This line of argument, like the others, fails to establish any basis for compelling production of the entire Fuller interview report.

Bowes posits that, "[i]n rare instances where *Brady* has been found to be violated, authority abounds for disclosing the report itself, as opposed to a paraphrasing of that report." ECF No. 842, ¶13 (citing *United States v. Morell*, 524 F.2d 550, 555 (2nd Cir. 1975) (suppressing a confidential DEA file on an informant); *Freeman v. Georgia*, 599 F.2d 65, 70 (police ballistics and fingerprint test report is discoverable); *Martinez v. Wainwright*, 621 F.2d 184, 187 (5th Cir. 1980) (murder victim's rap sheet possessed by a medical examiner and part of FBI records); *United States v. Diaz– Munoz*, 632 F.2d 1330, 1333–34 (5th Cir. 1980) (affidavit containing exculpatory information in a CIA file); *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 393 (7th Cir. 1985) (police officer's firearms worksheet); and *Briggs v. Raines*, 652 F.2d 862, 865 (9th Cir. 1981) (murder victim's rap sheet in FBI custody)).

The Court does not interpret the foregoing cases as establishing a general rule that prohibits the Government from making its *Brady* disclosures in the form of "summaries."  By

contrast, although there appears to be no binding Third Circuit authority on the matter, the

Government has cited cases from other jurisdictions which generally support its position on this

point. *See, e.g., United States v. Henderson,* 250 F. App'x 34, 38-39 (5th Cir. 2007) (finding no

*Brady* violation where "[a]ll the relevant information" from an email between a DEA agent and

AUSA was disclosed by the government in a letter to defense counsel one month prior to trial);

*United States v. Grunewald,* 987 F.2d 531, 535 (8th Cir. 1993) (finding no *Brady* violation where

the prosecution provided typewritten summaries of IRS agent's notes to the defense, rather than

the notes themselves); *United States v. Van Brandy,* 726 F.2d 548 (9th Cir. 1984) (no *Brady*

violation arose from the court's failure to compel production of an informant's FBI file, where

the prosecution provided summaries of information from the informant's file that was favorable

to the defense, the informant was vigorously cross-examined on credibility issues at trial, and the

value of any additional non-disclosed information was "marginal"); *United States v. Parnas,*

Case No. 19-CR-725, 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) ("The Government

represents that it has provided multiple letters disclosing the essential facts that would enable

Defendants to call witnesses and take advantage of any exculpatory testimony.  Assuming this to

be true, the Court concludes that the Government has met its *Brady* obligations."); *United States*

*v. Flynn*, 411 F. Supp. 3d 15, 37 (D.D.C. 2019) (court noting that "persuasive authority holds

that the government's production of summaries of notes and other documents does not constitute

a *Brady* violation") (citing *Grunewald* and *Van Brandy, supra*); *United States v. Abdallah*, 840 F.

Supp. 2d 584, 615 (E.D.N.Y 2012) ("[E]ven where the government learns of exculpatory

information during an interview, the government satisfies its *Brady* obligations by informing the

defendant that the witness may possess exculpatory evidence") (citing authority).

While the Government has advocated for a more limited form of disclosure under *Brady*, the Court finds that its position is generally well-taken and appears to represent the prevailing view. No authority has been cited from within this judicial circuit that would require the production of primary source material under the facts of this case. In any case, the disclosure at issue is not actually a "summary" at all but, rather, a direct excerpt from the Government's interview report. For the reasons discussed, Bowes has essentially obtained the discoverable portions of the actual Government report.

The Court recognizes that, under the law of this circuit, a defendant has no affirmative obligations to exercise "due diligence" relative to their acquisition of *Brady* information. *See Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 290 (3d Cir. 2016) ("[T]he United States Supreme Court has never recognized an affirmative due diligence duty of defense counsel as part of *Brady*, let alone an exception to the mandate of *Brady* as this would clearly be."); *see also Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 279 (3d Cir. 2021) (noting that "*Dennis* effected a material change in Circuit law with respect to the reasonable expectations of a *Brady* claimant: While we had previously suggested that defendants had to search for exculpatory evidence themselves, *Dennis* made clear that a defendant can reasonably expect— and is entitled to presume—that the government fulfilled its *Brady* obligations because the prosecution's duty to disclose is absolute and in no way hinges on efforts by the defense.").

Nevertheless, the Court is satisfied that the Government has fulfilled its *Brady* obligations so long as it provides the defense a fair and accurate summary of all potentially exculpatory information in Mr. Fuller's interview report. Because the Government represents that it has done so, Bowes is entitled to no more at this point in the proceedings. His motion will

therefore be denied.  The denial is without prejudice, and the Court will revisit the issue of

additional disclosures relating to Mr. Fuller's interview if future circumstances so warrant.

An appropriate order will follow.

Susan Paradise Baxter
United States District Judge