IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 1:21-cr-39 |
| v. | ) |
| | ) |
| JEREMY RICHARD BOWES | ) |

### MEMORANDUM OPINION RE: MOTION AT ECF NO. 1063

**Susan Paradise Baxter, United States District Judge**

On November 9, 2021, a grand jury indicted Hertel & Brown Physical and Aquatic Therapy ("HB") and twenty individuals on charges of health care fraud and conspiracy to commit wire and health care fraud. Defendant Jeremy Richard Bowes ("Bowes"), a former physical therapy assistant at HB, is among those who have been indicted on the aforementioned charges. The operative Superseding Indictment alleges that, between January 2007 and October 2021, Bowes and the other Defendants participated in a scheme whereby false or inflated billing statements were submitted to various public and private health care insurers in order to obtain payment for services that were not authorized or were not actually rendered to HB's patients in the manner described. The Government contends that the alleged conspiracy resulted in losses of at least $22 million to the defrauded entities.

Pending before the Court is Bowes' motion to dismiss the indictments based on an alleged violation of his constitutional right to a speedy trial. ECF No. 1063.[1] This motion will be denied.

---

[1] Bowes does not predicate his motion on an alleged violation of the Speedy Trial Act, 18 U.S.C. §3161. The protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time." *United States v. Lattany*, 982 F.2d 866, 870 n.5 (3d Cir. 1992). Because the Speedy Trial Act "was enacted largely to make

1

## I. DISCUSSION

The Defendant is guaranteed the right to a speedy trial under the Sixth Amendment to the U.S. Constitution. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."). However, "the right to speedy trial is a more vague concept than other procedural rights," and its boundaries therefore cannot be defined by a precise period of time. *Barker v. Wingo*, 407 U.S. 514, 521 (1972).

In *Barker,* the United States Supreme Court recognized four factors that inform whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his/her right; and (4) prejudice to the defendant. 407 U.S. at 531. None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

### (i) Length of Delay

The first factor ("length of delay") involves "a double enquiry":

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This

---

defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982), and citing other authority).

2

> latter enquiry is significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time.

*United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (quoting *Doggett v. United States*, 505 U.S. 647 (1992)). Thus, a district court "first decides whether the delay is long enough that it should trigger analysis of other *Barker* factors." *Id.* "If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *Id.*

The Supreme Court has observed that "postaccusation delay" approaching one year is sufficient to trigger further review of the *Barker* factors. *Doggett*, 505 U.S. at 652 n. 1." Here, the original indictment was filed in November 2021 and the operative superseding indictment was filed on May 10, 2022. ECF Nos. 1, 425. Trial will commence on March 4, 2025. Thus, the delay in this case is sufficient to warrant an analysis of the *Barker* factors.

Nevertheless, "'[p]resumptive prejudice,' when used in this threshold context simply 'marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.'" *Hakeem v. Beyer*, 990 F.2d 750, 759-60 (3d Cir. 1993) (quoting *Doggett*, 505 U.S. at 652 n.1). "Such 'presumptive prejudice' cannot alone create a Sixth Amendment violation but 'it is part of the mix of relevant facts, and its importance increases with the length of delay.'" *Id.* at 760 (quoting *Doggett*, 505 U.S. at 656). In addition, the Supreme Court has instructed that "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31 (noting, for example, that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

Here, the elapsed time from the original indictment to trial will be just shy of three years and four months (or approximately forty months). Although substantial enough to warrant review of the *Barker* factors, this period of delay is considerably less than that which the

3

Supreme Court has characterized as "extraordinary." *See Doggett*, 505 U.S. at 652 (noting "extraordinary" 8 1/2-year delay); *Barker*, 407 U.S. at 533 (describing delay of more than five years as "extraordinary"). Moreover, this case does not involve an "ordinary street crime" but, rather, an alleged conspiracy spanning fourteen (14) years and involving twenty-one (21) named Defendants who, according to the Government, engaged in a systemic scheme of health care fraud across numerous physical therapy practice locations, using a variety of artifices. The case has been vigorously litigated at every procedural phase, requiring an unusual investment of judicial time and resources. From the outset, various Defendants have advocated the need for special case management practices or considerations due to the unusual complexity of the case. Given the nature of the criminal charges and allegations at issue in this matter, the period between indictment and trial is justifiable and well within the limits of constitutionally acceptable delay. *Cf. United States v. Baldonado*, Crim. No. 21-430, 2025 WL 88099 (D.N.J. Jan. 14, 2025) (no Sixth Amendment violation where approximately 43 months elapsed between the time of indictment and the date of the Court's ruling denying speedy trial challenge); *United States v. Jones*, Case No. 3:21-CR-126, 2024 WL 4941020 (M.D. Pa. Dec. 2, 2024) (no speedy trial violation despite 43-month delay between defendant's arraignment and date of trial).

(ii)    *Reason for the Delay*

When considering the second factor (*i.e.* the reason for delay), the Court is required to calculate the delay attributable to each party and differentiate the delay caused by Defendant from that which is caused by the Government. *See United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014). "[D]elay caused by the defense weighs against the defendant." *Id.* at 295 (internal quotation marks and citation omitted); *see also United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) ("Defendants bear the responsibility of delay caused by their co-defendants, and

4

such delay cannot be attributed to the Government.") (citing *Claxton*, 766 F.3d at 295)); *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023) (affirming district court ruling that delay did not violate Sixth Amendment and noting that while defendant "did not join in many of the [co-defendants'] requests for extensions, neither did he file any objections to them nor a motion to sever"), *cert. denied*, 144 S. Ct. 314 (2023).

Delay caused by the Government is grouped into the following categories, each carrying different weight: (1) "A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government;" (2) "A more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (internal quotation marks and citation omitted).

In this case, the majority of delay is attributable to the Defendants, rather than the Government. In an opinion filed July 26, 2022, the Court denied a motion by Defendants Johnson, Dudenhoefer and Rainey to sever their cases. In considering the speedy trial implications of joinder, the Court noted that almost none of the delay up to that point in case was attributable to the Government and, to the extent any delay *could* be attributed to the Government as the result of it seeking a protective order, the Government had acted in good faith and with reasonable diligence, which "should serve to justify appropriate delay." *United States v. Johnson*, No. 1:21-CR-39, 2022 WL 2953904, at *7 (W.D. Pa. July 26, 2022) (quoting *Claxton*, 766 F.3d at 295).

Following this Court's entry of a protective order on January 18, 2022, ECF No. 340, the Government immediately began its production of voluminous discovery, which continued on a rolling basis. Thereafter, the defense sought numerous extensions of the pretrial motions deadline

5

as it reviewed the Government's document-intensive disclosures. These extensions were granted in the interest of justice.

In January 2023, the first discovery motions were filed. Motions practice ensued thereafter on a continuing basis, with virtually every motion being filed by the defense. This phase of the litigation closed on June 3, 2024, when the Court issued its final ruling related to discovery disputes.

The following day, June 4, 2024, the Court held a video status conference, during which it established a trial date of January 27, 2025 and a backup trial date of February 18, 2025. Every Defendant who appeared at the status conference through counsel -- including Bowes -- waived their speedy trial rights through the date of trial. Also on June 4, 2024, the Court issued a written pretrial order which formalized the aforementioned trial and back-up trial dates and established a tiered schedule for the resolution of remaining pretrial matters, including additional pretrial motions, expert disclosures and challenges thereto, *Giglio* and Jencks disclosures, and motions *in limine*.

Following the Court's issuance of the June 4, 2024 pretrial order, another round of pretrial motions practice ensued. Numerous suppression motions and one motion to sever were filed by the defense. The trial date was eventually extended twice at the request of certain Defendants, first to the backup date of February 18, 2025 and later to the current date of March 4, 2024. As of this juncture, the Court is reviewing and/or awaiting the remaining pretrial filings from both the prosecution and the defense.

Throughout this litigation, the United States has prosecuted its case diligently and has not evidenced deliberate efforts to delay the trial. As noted, the Government commenced its discovery production immediately after the Court entered its protective order in this case and

continued its disclosures thereafter on a rolling basis, with reasonable and customary promptness. Throughout this case, the prosecution has complied with the Court's filing deadlines and has rarely sought extensions or continuances. At one point in the proceedings, the Government requested that a hearing be set regarding two motions to suppress, demonstrating its efforts to diligently move the case forward. In connection with this hearing, the Government proactively moved for an *in camera* review of the principle witness's grand jury testimony, again demonstrating an effort to prevent further delay. Although the adequacy of the Government's discovery disclosures have been the subject of numerous defense motions, the Government has mostly prevailed in its positions on discovery. To the extent that additional disclosures have been ordered, the Court finds that the Government has litigated its position in good faith and without an intent to delay these proceedings. The Government also successfully defended numerous defense motions challenging its pre-indictment investigation.

In contrast to the Government, a majority of the delay in this case is attributable to the defense including, at times, Bowes. The Court does not say this in a pejorative sense; on the contrary, the Defendants have merely exercised their right to vigorously test the Government's case by challenging its investigation, evidentiary disclosures, and proof. Nevertheless, it is undeniable that, for much of this case, the Defendants have engaged in vigorous motions practice, with all of the delay that entails, including time for briefing, argument, and review by the Court. And collectively, they have obtained numerous extensions of deadlines or continuances of court proceedings, including two continuances of the trial date.

On a personal level (and as outlined in the Government's brief), Bowes has:

> (1) filed a motion to postpone and/or reschedule his arraignment (Doc. 77); (2) filed two motions to extend the time for filing pretrial motions, in which he averred that "[t]he additional time will be excluded for speedy-trial purposes", and which

7

resulted in extensions through June 24, 2022 (Docs. 280, 417); (3) filed a motion to convert his retained counsel to CJA panel appointed counsel . . . (Docs. 636, 643, 655, 689, 690, 693); (4) joined in his co-defendants' motions to dismiss (Docs 800, 803) the superseding indictment (Doc. 804); (5) filed a motion to compel production of the interview report for Don Fuller, which was denied (Docs. 842, 857, 858); (6) filed a motion to modify this Court's pretrial scheduling order with respect to the deadlines set for disclosure of Jencks material and motions in limine (Doc. 873); (7) joined in his codefendants' motions to suppress evidence at document numbers 906, 907, 909, 910, 911 (Doc. 921); (8) filed a joint motion to compel additional expert disclosures by the government (Doc. 932); (9) filed a joint motion for an extension of time to make defense expert disclosures (Doc. 933); (10) filed a joint renewed motion for additional Brady disclosures or alternative relief (Doc. 1031); and (11) filed a joint motion to issue final pretrial order (Doc. 1041). The last motion filed by Bowes prior to asserting his speedy trial right was filed December 18, 2024 – two months before the scheduled trial date. (Doc. 1041). Bowes cannot file and join in these numerous motions and then complain that there has been unreasonable delay by the government.

ECF No. 1105 at 5-6.

In alleging a Sixth Amendment violation, Bowes points primarily to the delay that occurred between January 2023, when the first discovery motion was filed by the defense, and June 3, 2024, when the Court issued its final ruling on discovery motions. Bowes alludes to the length of time that was required for the resolution of these motions as delay which must be attributed to the Government. But not all of this time can be characterized by Governmental delay. During this 17-month period, at least eight different Defendants filed individualized discovery motions tailored to their own circumstances, and these were received on a rolling basis through mid-May 2023. *See* ECF Nos. 611, 619, 625, 677, 681, 758, 775. Each of them required time for briefing and, in some cases, argument. Some of the motions were the subject of supplemental briefing and/or argument. *See, e.g.*, ECF Nos. 826, 828, 841, 850. In short, not all motions were immediately ripe for resolution at the same time.

During this interim period, many Defendants sought continuances of their deadline for filing pretrial motions. The Court accorded one group of Defendants an extension which would

8

allow them to file pretrial motions within 30 days following the Court's final ruling on the pending discovery motions. ECF No. 782. Separately, Defendants Fachetti and Bailey each sought and received extension through October 16, 2023. ECF No. 784, 809, 795. These extensions were granted in the interests of justice and were deemed excludable delay for purposes of the Speedy Trial Act.

During the timeframe in question, the Court also had pending before it two suppression motions filed by Defendants Exley and Johnson on May 15, 2023. ECF Nos. 771, 773. The Court ordered briefing and scheduled a hearing, which was later continued to October 29, 2023 upon the request of Defendant Exley. ECF No. 796, 797, 798.

Then, in July 2023, Defendants Johnson and Exley filed a motion to dismiss the Superseding Indictment based on alleged prosecutorial misconduct related to the Government's suppression brief. ECF No. 800. The Defendants did not ultimately prevail on their motion to dismiss, but the matter created additional necessary delay while the motion was briefed and taken under advisement by the Court. Because of the potentially dispositive nature of the motion, the Court chose to decide it before turning to the non-dispositive discovery motions. To that end, the undersigned issued a ruling denying the motion to dismiss on October 6, 2023. ECF No. 817.

Thereafter, between October 25, 2023 and June 3, 2024, the Court issued a series of rulings adjudicating the various discovery motions that had been filed by the Defendants. *See* ECF Nos. 830, 831, 832, 833, 835, 836, 851, 852, 858, 859. This included a motion filed by Bowes on December 10, 2023, to compel disclosure of a particular interview report. *See* ECF Nos. 842, 856, 857.

In light of the foregoing, it is clear that the majority of delay which occurred between January 2023 and June 3, 2024 is legitimately attributable to the Defendants' requests for extensions of the pretrial motions deadline and/or Defendants' motions practice. And even though most of these extensions and/or motions were filed by Bowes's co-Defendants rather than by Bowes himself, their delay is attributed to him. *See Thompson*, 716 F. App'x at 72; *Rodriguez-Mendez*, 2023 WL 3378005, at *3; *see also United States v. Loud Hawk*, 474 U.S. 302, 316-17 (1986) ("'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.'").

Nevertheless, even if one assumes that some portion of the delay from January 2023 to June 3, 2024 is attributable to the Court, this is more of a neutral factor and therefore afforded less weight. *See Barker*, 407 U.S. at 531 (A "more neutral reason [for delay] such as negligence or overcrowded courts" weighs against the Government, but "less heavily."); Jones, 2024 WL 4941020, at *9. Regardless, the amount of any such Governmental delay is plainly exceeded and outweighed by that which is fairly attributable to the defense.

Bowes also appears to object to the Court's June 4, 2024 pretrial order, which established a tiered schedule for additional pretrial proceedings and a January 27, 2025 trial date. The Court established this tiered timetable based on the complexity of the case and the fact that it could not practicably be tried within the time limits established by the Speedy Trial Act. *See* ECF No. 872.

Here, the Court rightly determined that this is a complex case. As discussed, the Superseding indictment named twenty-one Defendants and alleges a 14-year conspiracy involving perhaps dozens of employees who worked for HB at various times across five separate

physical therapy locations. The Government claims that, during this 14-year period, HB and its employees used various artifices to fraudulently overbill numerous health insurance providers. From the earliest stages of these proceedings, defense counsel advocated for special pretrial measures to account for the unusual nature of this case. Indeed, counsel has stressed the complexity of this litigation in connection with CJA proceedings, in seeking structured and/or early discovery, and -- most recently -- in advancing certain motions *in limine*. A brief glance at the docket will dispel any suggestion that this is a routine criminal matter or that the case has been allowed to languish. Instead, the docket reflects a steady stream of filings, both substantive and routine. Nearly every phase of this litigation has been hotly contested and many of the defense motions have involved extensive briefing and argument. Even at this juncture, there are numerous pending challenges to the anticipated expert witnesses, more than two dozen motions *in limine*, several *Bruton* motions, and additional pretrial issues that the Court anticipates needing to resolve. Had the Court declined to provide the additional time for litigation of these pretrial matters case, the Defendants' due process rights might have been seriously impaired.[2]

Accordingly, the length of delay and reason for delay weigh in favor of the Government. Given the complexity of this case and the substantial periods of delay that are attributable to the Defendants, the Government has met its burden of justifying the time lag between indictment and trial. These factors weigh against a finding that Bowes's speedy trial rights have been violated.

---

[2] To the extent Bowes complains that the Court set a deadline for pretrial motions that exceeded the request of certain Defendants, *c.f.* ECF No. 782 and ECF No. 872, this was done partly to account for the fact that the Government was ordered to disclose employee statements within the thirty-day period following the Court's June 3, 2024 ruling on HB's discovery motion. *See* ECF No. 852.

11

### (iii)   *Defendant's Assertion of His Speedy Trial Rights*

The third *Barker* factor requires the Court to consider whether and how a defendant asserted his speedy trial right. *Barker*, 407 U.S. at 531. The Supreme Court has admonished that a defendant is not presumed to have waived his speedy trial right just because they were not asserted. *See Barker*, 407 U.S. at 525. At the same time, however, a defendant is not relieved of responsibility for asserting his speedy trial rights. *Id.* at 529 (recognizing that "a defendant has some responsibility to assert a speedy trial claim[.]").

Here, despite Bowes's complaint about pretrial delay, he twice sought extensions of time in which he waived his speedy trial rights. ECF Nos. 280, 417. He also failed to object to the numerous extensions sought or incurred by his co-Defendants. In fact, Bowes did not assert his right to a speedy trial until January 7, 2025, when he filed the instant motion. Notably, this is in contradiction to his counsel's actions some seven months earlier, during the June 4, 2024 video status conference, when Bowes' counsel affirmed his availability for a trial commencing on either January 27, 2025 or February 18, 2025 and waived any speedy trial rights through those dates. *See* ECF No. 1098.[3]

Also notable is the fact that this Court issued a pretrial order on June 4, 2024, establishing the January 27 trial date, and confirming that, "[i]n the event that any party has a conflict with this date, he or she may file a motion to continue the trial date. If a continuance is granted, jury selection and trial shall commence on February 18, 2025." ECF No. 872. Following issuance of

---

[3] Bowes asserts in his reply brief that counsel merely waived any assertion of rights under the Speedy Trial Act. However, counsel did not articulate any such distinction at the time of the conference, nor did he assert a reservation of Bowes' Sixth Amendment rights. Regardless, at the very least, the evidence suggests an acquiescence in the delay if not an outright waiver of the issue.

12

this order, Defendant Dudenhoefer sought a continuance to the February 18 trial date. Only Defendant Burger (*not* Bowes) objected to the continuance. ECF Nos. 875 and 879. The Court took the matter under advisement "pending an opportunity for other parties to file additional responses on or before June 24, 2024." ECF No. 883. Burger ultimately withdrew his objection and neither Bowes nor any other party ultimately opposed the Court's continuance to the February 18, 2025 trial date. *See* ECF No. 892. At the request of other Defendants -- and over the objection of Bowes, the Court ultimately continued the trial date by two additional weeks to the present date of March 4, 2025.

Thus, Bowes did not assert his speedy trial rights until January 7, 2025 -- approximately 38 months after he was indicted, just weeks before the anticipated trial date, and seven months *after* his counsel had already expressly waived any such challenge through the date of trial. To the extent Bowes legitimately challenged the final continuance of trial to the current March 4, 2025 date, the Court notes that this continuance resulted in a mere two-week delay and was granted at the request of other Defendants.

In view of these circumstances, the third *Barker* factor weighs substantially against a finding that Bowes' right to a speedy trial was violated. *See United States v. Jackson-Fletcher*, No. CR 23-154-2, 2025 WL 373436, at *5 (E.D. Pa. Feb. 3, 2025) (defendant's "failure to assert his speedy trial right prior to the instant Motion," more than 20 months after his indictment, "weigh[ed] against a finding that the right had been violated"); *United States v. Baldonado*, Crim. No. 21-430, 2025 WL 88099, at *5 (D.N.J. Jan. 14, 2025) (noting that "Defendant's assertion of his right now -- on the eve of trial and after a series of continuances agreed to by both parties" -- rendered the Defendant's claim "hollow"); *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023) (defendant's failure to assert

13

speedy trial rights until two months before trial weighed against finding a Sixth Amendment violation; while defendant "did not join in many of the [co-defendants'] requests for extensions, neither did he file any objections to them nor a motion to sever").

                (iv)    *Prejudice to the Defendant*

Lastly, we consider any prejudice to the Defendant that has resulted from the delay. The Supreme Court has identified "three types of harm that arise from unreasonable delay between formal accusation and trial: (1) 'oppressive pretrial incarceration;' (2) 'anxiety and concern of the accused;' and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.'" *Claxton*, 766 F.3d at 296 (quoting *Doggett*, 505 U.S. at 654). "The burden of showing prejudice lies with the individual claiming the violation." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993).

"Of the three types of prejudice, impairment of the accused's defense is the most serious," as such prejudice "skews the fairness of the entire system." *United States v. Wilson*, 216 F. Supp. 3d 566, 579 (E.D. Pa. 2016) (citing *Barker*, 407 U.S. at 528, 532 )(internal quotations omitted). In comparison, "[c]redit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case." *Id.* (citing *Hakeem*, 990 F.2d at 762); *see also Jackson-Fletcher*, 2025 WL 373436, at *5.

Here, Bowes has not been subjected to pretrial incarceration, nor has he alleged any specific impairment of his defense as a result of pretrial delay.[4] Instead, he cites to financial

---

[4] Further, this is not a case where such prejudice can be presumed. In *Battis*, the Third Circuit held that prejudice would be presumed when there was a forty-five-month delay in bringing the defendant to trial. *See* 589 F.3d at 683. The delay in this case falls well short of that mark. Moreover, the presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay or can be rebutted if the Government affirmatively proves that the delay

hardships and related stress stemming from the pendency of the criminal charges. In particular, Bowes states that: he has had to open a line of credit to pay for his attorney, he is currently subject to "interest only" repayment terms on that line of credit, he has been denied issuance of new credit cards because of the fraud charge, his wife has had to prematurely convert her retirement funds (resulting in a penalty), and his children have had to switch from private to public schooling.

While the Court is sympathetic to Bowes's plight, it does appear, as the Government points out, that he was already experiencing a degree of financial hardship, in the form of loans and credit card debt, prior to being indicted. Bowes also does not indicate whether he is currently employed and, if not, what steps he has taken toward securing income. And, since January 2023, Bowes' counsel has been converted to court-appointed; therefore, he does not currently have to pay for his legal representation. As the Government notes, Bowes does not indicate how the length of the case has impacted his initial retainer fee, which Bowes presumably would have had to pay even in the absence of the challenged delay.

In sum, to the extent Bowes has demonstrated actual prejudice as the result of post-indictment delay, the Court affords this factor limited -- but not dispositive -- weight. *See Barker,* 407 U.S. at 533 (explaining that none of the four factors bearing on speedy trial consideration are "sufficient" for finding a violation, nor do they have "talismanic qualities";

---

left the defendant's ability to defend himself unimpaired. *Id.* at 682. Here, as discussed, Bowes acquiesced in nearly all of the delay, and actually waived his right to a speedy trial up to the February 18, 2025 trial date previously established by the Court. As matters presently stand, his co-Defendants continue to actively litigate this case and appear ready to mount a full defense. Bowes appears to be similarly positioned to defend himself at trial and has not contended otherwise. Accordingly, no grounds exist in this case for presuming prejudice.

15

thus the factors must be considered along with other relevant circumstances, and "courts must still engage in a difficult and sensitive balancing process").

*(v)    Balancing of Factors*

In the context of this case -- which involves allegations of a complex criminal conspiracy, the Court must bear in mind that "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *United States v. Ewell*, 383 U.S. 116, 120 (1966) (citation omitted). Here, the Court finds that, on balance, the *Barker* factors weigh against the Defendant. The delay is not unreasonable in light of the complexities of this case. The delay is mostly attributable to continuances and/or motions practice by the defense. Bowes largely acquiesced in the delay and did not affirmatively assert his speedy trial right until weeks before trial was scheduled to commence. These factors weigh against the Defendant. Bowes' assertions of prejudice are accorded only limited weight. Consequently, dismissal of the Superseding Indictment on Sixth Amendment grounds is not warranted.

## II.    CONCLUSION

Based upon the foregoing reasons, Bowes' motion to dismiss the indictments based on alleged violations of his Sixth Amendment right to a speedy trial, ECF No. 1063, will be denied.

An appropriate Order follows.

*Susan Paradise Baxter*
Susan Paradise Baxter
United States District Judge